ROGER GUSTAFSON, APPELLANT, V. BURLINGTON NORTHERN
RAILROAD COMPANY, A CORPORATION, APPELLEE.
561 N.W.2d 212

Filed April 4, 1997.   No. S-94-1089.

C. Marshall Friedman, Douglas K. Rush, Bret E. Taylor, and John J. Higgins, for appellant.

Cheryl R. Zwart, of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BURKHARD and CASSEL, D. JJ.

CASSEL, D.J.

The appellant, Roger Gustafson, brought this action in the district court for Douglas County against the appellee, Burlington Northern Railroad Company, for personal injuries pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1994). The injuries emanated from three incidents occurring in the course of Gustafson's employment as a carman. From a judgment upon the jury's general verdict in his favor in the amount of $63,500, Gustafson appeals.

This case was originally filed with the Nebraska Court of Appeals. We removed the case to this court's docket pursuant to statutory authority to regulate the caseloads of this court and the Court of Appeals. Finding no reversible error by the trial court, we affirm.

## I. FACTUAL BACKGROUND

Gustafson worked as a carman in Burlington's Havelock shops in Lincoln, Nebraska. In that capacity, Gustafson performed repairs on railroad cars at the Havelock facility. He worked primarily in a particular area repairing "heavy wrecks." Each carman works with another carman in a two-person team. For over 5 years before the first accident at issue, Gustafson worked with Gary Knippel.

On October 2, 1989, Gustafson and Knippel were engaged in the repair of a scale car, which is used to calibrate scale facilities over which rail cars are weighed. The scale car was lifted

by a crane, the wheels removed, and stands placed under the car. In each of four wheel wells, two spring cup pads were to be removed, repaired, and then reinstalled. When reinstalling the last spring cup, Gustafson suffered an injury to his lower back, later diagnosed as a herniated lumbar disk, while lifting the spring cup.

On February 16, 1990, Gustafson and Knippel attempted to clear the drive mechanism on the door gate of a C-6 hopper car (a grain car with three "hopper" gates at the bottom which can be opened for unloading). After repair, the hopper car was blasted with metal fragments (shot) to remove paint and rust prior to repainting. Some of the shot worked into each of the hopper gate mechanisms, causing them to bind and stick. Two of the gates opened easily. The third gate resisted Gustafson's efforts. While using a 30-inch pry bar to loosen the gate, Gustafson reinjured his back.

On April 24, 1991, Gustafson was assigned to a pipe-bending station. Gustafson used a rolling toolbox which had a rack on top to hold pieces of pipe. He loaded the rack with eight 57-inch pieces of pipe, each pipe being 1¼ inches in diameter. He then attempted to move the toolbox a short distance to align the toolbox with the pipe-bending machine. The toolbox tipped over, and in attempting to move out of the way, Gustafson again reinjured his back.

Additional facts will be discussed as required by the analysis.

## II. ASSIGNMENTS OF ERROR

Gustafson asserts that the trial judge erred in (1) submitting the cause using a general verdict form without special interrogatories or separate verdict forms, (2) failing to give requested instructions concerning the unavailability of an assumption of risk defense, (3) submitting the issue of contributory negligence as to each of the three incidents, and (4) refusing to give the "apportionment" portion of the preexisting condition instruction.

## III. STANDARD OF REVIEW

The submission of special findings rests within the discretion of the trial court. *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978); *Masonic Bldg. Corporation v. Carlsen*,

128 Neb. 108, 258 N.W.2d 44 (1934). Unless the record shows an abuse of that discretion, the trial court's decision should stand. *Langenheim v. City of Seward, supra; Hedrick v. Strauss,* 42 Neb. 485, 60 N.W. 928 (1894).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *McArthur v. Papio-Missouri River NRD,* 250 Neb. 96, 547 N.W.2d 716 (1996).

When contributory negligence is pled as a defense and there is no competent evidence to support it, it is prejudicial error to submit to the jury issues involving contributory and comparative negligence. *Dolberg v. Paltani,* 250 Neb. 297, 549 N.W.2d 635 (1996). If reasonable minds might draw different conclusions from the facts, the issues of negligence and contributory negligence are for the jury. *Harrison v. Seagroves,* 250 Neb. 495, 549 N.W.2d 644 (1996).

## IV. ANALYSIS

### 1. PREEMPTION BY FEDERAL LAW

We begin by observing that the applicable principles are controlled by federal law.

> The Federal Employers' Liability Act preempts state law and statutorily supplies uniform law controlling a railroad employee's claim for damages caused by negligence of the employer railroad while the employee is engaged in the railroad's interstate commerce activity. . . .
>
> . . . .
>
> Courts of the United States and courts of the several states have concurrent jurisdiction over claims controlled by the Federal Employers' Liability Act. 45 U.S.C. § 56. In disposing of a claim controlled by the Federal Employe[r]s' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act [citations omitted], but substantive issues concerning a claim under the Federal Employers' Liability Act are determined by the provisions

of the act and interpretative decisions of federal courts construing the Federal Employers' Liability Act . . . . *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 621-23, 467 N.W.2d 388, 392-93 (1991).

## 2. USE OF GENERAL VERDICT FORM

Gustafson asserts that the trial court erred by submitting the cause upon a general verdict form rather than by propounding special interrogatories or by submitting separate verdict forms for each claim.

Gustafson submitted requested instructions, including a verdict form incorporating special interrogatories. However, during the instruction conference, Gustafson focused his efforts toward three verdict forms, one for each cause of action, without special interrogatories, as follows:

THE COURT: [Instruction No.] 25? We'll have to clean that up, and then we'll give them the two verdict forms.

[Plaintiff's counsel]: No objection.

[Defendant's counsel]: Defendant would object to not submitting special interrogatories. . . .

. . . .

[Plaintiff's counsel]: I have a concern somewhat along those lines, but it doesn't have to go to special interrogatories. I drafted special interrogatories because I thought that was normally used in Nebraska. I would prefer to simply not giving [sic] special interrogatories.

The problem I have is along the lines of [defendant's counsel's]. We have a three-count lawsuit, three separate injuries. . . .

THE COURT: Do you want to give three verdict forms?

[Plaintiff's counsel]: With three verdict forms with the plaintiff's claim on October 2nd, 1989 —

. . . .

[Defendant's counsel]: If you're going to do that, why not do the interrogatories?

. . . .

[Plaintiff's counsel]: Because the interrogatories go on and on and on and are very long[,] confusing[,] and doesn't [sic] add anything other than what the court instructed in

the earlier instructions about what the elements are and the claims.

. . . .

[Plaintiff's counsel]: Having now received the final set of instructions and the verdict forms that are used, plaintiff notes that the Court is tendering one verdict form and there are three separate counts in this case.

Plaintiff would object to tendering only one verdict form with only one finding of gross damages without submitting separate verdict forms for each of the three injuries and the three claims that are in the lawsuit.

### (a) Special Interrogatories

Gustafson's attorney succinctly stated why special interrogatories should not be given. We agree, as did the trial court, that the proposed special interrogatories were long and confusing. The trial court did not abuse its discretion in declining to submit special interrogatories. Moreover, a party cannot complain of error which he has invited the court to commit. *Norwest Bank Neb. v. Bowers*, 246 Neb. 83, 516 N.W.2d 623 (1994). Gustafson cannot now complain of that which he previously urged.

### (b) Separate Verdict Forms

To sustain his claim of error regarding the use of a single general verdict form, Gustafson points to the questions submitted by the jury. The jury inquired if they must agree on the particular elements of negligence or contributory negligence regarding each incident. They later queried whether their verdict must identify the issues upon which they based their award. We are persuaded, however, that the jury questions demonstrate that the jury *did* understand its task. The submission of one general verdict form was not an abuse of discretion.

### 3. REQUESTED INSTRUCTIONS NOS. 14 AND 15

Gustafson submitted requested jury instructions. Requested instruction No. 14 provided:

If [p]laintiff undertook his duties in a manner and in a place ordered and furnished by [d]efendant railroad, any notice of [sic] knowledge on his part of risk and dangers

incident thereto or unsafe condition of the place may not form the basis of a finding that doing his assigned work with such knowledge was negligent on his part. In other words, where the employer adopts a means and method of carrying out assigned work or selects or maintains the place where the work must be done, the employer may not claim that its employee was negligent because he did not refuse to do his assigned work in the manner and at the place selected by the employer since the employee is expected to follow orders and do his assigned job at the assigned time and place.

Requested instruction No. 15 was identical to requested instruction No. 14, with the exception of the word "or" substituted for "of" after the word "notice" in the first sentence.

The trial court gave instruction No. 15, as follows:

You may not find [p]laintiff contributorily negligent in doing his assigned work having notice or knowledge of the dangerous conditions existing. In other words, [p]laintiff's doing his assigned work knowing of the dangerous conditions existing may not form the basis of a finding that he was negligent.

It is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in the instructions actually given. *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996). The substance of the requested instructions was included in instruction No. 15. Gustafson had no right to particular language. The parties were entitled to nothing more or less than a fair, impartial, and complete statement of the applicable law. The trial court's instruction on this issue complied in all respects.

### 4. SUBMISSION OF CONTRIBUTORY NEGLIGENCE

Gustafson's next assignment of error centers on the distinction between an employee's contributory negligence and his assumption of the risks of employment. FELA utilizes a mandatory rule of comparative negligence, which reduces the employee's recovery by that part of the injury which is attributable to the employee's own negligence. 45 U.S.C. § 53.

However, FELA eliminates an injured employee's assumption of risk as a defense to a claim. 45 U.S.C. § 54.

Although a defendant is entitled to a contributory negligence instruction if there is any evidence to support the theory, to receive such the defendant must produce evidence of the plaintiff's lack of due care. *Birchem v. Burlington Northern R. Co.*, 812 F.2d 1047 (8th Cir. 1987).

Gustafson focuses on one statement by the Eighth Circuit in *Van Boening v. Chicago & North Western Transp. Co.*, 882 F.2d 1380, 1382 (8th Cir. 1989), in which the court stated that "[t]he issue of contributory negligence is submissible to the jury only if a defendant offers *some evidence independent of the plaintiff's testimony* from which a jury could reasonably find a lack of due care by the plaintiff." (Emphasis supplied.) (Citing *Wilson v. Burlington Northern, Inc.*, 670 F.2d 780 (8th Cir. 1982), *cert. denied* 457 U.S. 1120, 102 S. Ct. 2934, 73 L. Ed. 2d 1333.)

We initially observe that the emphasized statement appears nowhere in *Wilson*. Moreover, in *Van Boening*, contributory negligence was not an issue. The issue on appeal concerned the plaintiff's claim that an instruction stating " 'evidence concerning the manner and way in which Van Boening used the equipment is proper for your consideration,' " *Van Boening v. Chicago & North Western Transp. Co.*, 882 F.2d at 1382, improperly introduced the issue of contributory negligence. The federal appeals court rejected the argument, noting that concerning the proper issues of the defendant's negligence and causation, "it would be impossible to preclude the jury from considering the manner and way in which the accident occurred . . . ." *Id.*

Nor is Gustafson's contention consistent with the law of other federal courts. See, *Gish v. CSX Transp., Inc.*, 890 F.2d 989 (7th Cir. 1989); *Hurley v. Patapsco & Back Rivers R. Co.*, 888 F.2d 327 (4th Cir. 1989); *Jones v. Consolidated Rail Corp.*, 800 F.2d 590 (6th Cir. 1986). These cases consistently hold that contributory negligence may not be supported by simply attacking the plaintiff's credibility. However, we determine that the plaintiff's testimony may constitute evidence of the plaintiff's own negligence. Whether Gustafson's testimony actually pre-

sents evidence of contributory negligence depends upon the content of the testimony.

We therefore consider whether there was sufficient evidence to submit the issue of contributory negligence regarding each incident.

### (a) October 2, 1989 (Scale Car)

The trial court submitted two specifications of contributory negligence concerning the scale car incident: (1) failing to take reasonable lifting precautions for his own safety and (2) failing to request additional assistance if that assistance was necessary.

Gustafson testified that he lifted the spring cup pad by himself. His teammate, Knippel, testified that they worked together. Knippel also testified that no additional assistance was requested. Although Knippel testified that Gustafson could not use his legs for lifting in the crouched position required by the work area, Gustafson testified that he did use his legs for lifting to the extent possible.

Gustafson's testimony also stated that there was not room for two persons to work as a team in lifting the spring cup pad into place. Gustafson's foreman, Gary Sydzyik, testified that there was room for two people to get up inside of the wheel well and that two persons could make a complete lift of the spring cup pad inside the wheel well. Sydzyik testified that he expected Gustafson and Knippel to use teamwork to install the spring cup pad. Gustafson's testimony showed that he lifted the spring cup pad alone. In addition, the parties introduced photographs showing the work area involved.

This disputed testimony supports Burlington's theory that Gustafson failed to take reasonable lifting precautions for his own safety and that he failed to request additional assistance. The trial judge properly submitted these issues to the jury. The weight of the evidence and the resolution of conflicts in the evidence devolved on the jury.

### (b) February 16, 1990 (Hopper Car)

The trial court submitted three specifications of contributory negligence concerning the hopper car incident: (1) failing to request additional physical assistance if that assistance was

indicated, (2) failing to request or utilize additional equipment if indicated, and (3) failing to avoid work in a crouched and awkward position.

The parties adduced testimony that Gustafson did not request assistance from his teammate, Knippel. Knippel's and Gustafson's testimony concurs in that regard. Although there was testimony that a 5-foot pry bar was available, the evidence showed that Gustafson continued to use a 30-inch pry bar, which did not provide maximum leverage. This evidence reasonably could be viewed in a light consistent with Burlington's first two specifications of contributory negligence. Similarly, Gustafson's testimony and the exhibits concerning Gustafson's location and position reasonably could be viewed in a light consistent with Burlington's contention that Gustafson continued to work in a crouched and awkward position. The inferences to be drawn from this evidence were reserved to the jury. The trial court properly submitted these allegations of contributory negligence.

### (c) April 24, 1991 (Toolbox)

Regarding the last incident, the trial judge submitted as a specification of contributory negligence that Gustafson failed "to utilize reasonable precautions for his own safety by loading 8 sections of pipe on top of the tool box, and then pulling the tool box." The trial court had submitted the issue of Burlington's negligence upon the specification that Burlington was negligent in "furnishing the [p]laintiff with a tool box which was unstable and unsteady."

It would have been erroneous to submit Gustafson's mere use of the toolbox as contributory negligence. That usage, standing alone, would constitute an impermissible assumption of risk defense. However, Burlington theorized that Gustafson added to the danger by stacking eight sections of pipe upon the toolbox and by pulling with only one hand upon the device thus loaded. This defense does not require expert testimony. Burlington's contention rests upon a commonsense approach within the knowledge and understanding of a layperson. It is also supported, to some degree, by the testimony of Knippel.

Although by no means compelling, Gustafson's testimony reasonably may be viewed in a light consistent with Burlington's theory of contributory negligence and was therefore sufficient to support the submission of the contributory negligence defense to the jury. The law assigns the determination of such questions to the jury.

In addition, as noted above, instruction No. 15 submitted by the trial court directed the jury that merely doing assigned work with knowledge of the dangerous conditions then existing could not form the basis of a finding that Gustafson was negligent. In evaluating a claim of an improper jury instruction, the jury instructions must be read together as a whole. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). When read together, the instructions adequately instructed the jury regarding the additional danger necessary to support a finding of contributory negligence regarding the toolbox incident.

### 5. PREEXISTING CONDITION APPORTIONMENT INSTRUCTION

Gustafson also assigns error regarding the trial court's instruction concerning Gustafson's preexisting back condition. In instruction No. 16, the trial court instructed the jury that

> [a] person who has a condition or disability at the time of an injury is not entitled to recover damages for that condition. However, he is entitled to recover damages for any aggravation of such preexisting condition or disability proximately resulting from the injury.
>
> This is true even if the person's condition or disability made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.
>
> Where a preexisting condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation.

Gustafson submitted requested instruction No. 23, which stated:

> The [d]efendant takes the [p]laintiff as it finds him, that is, if the [d]efendant is liable to [p]laintiff, the [d]efendant is liable for all of the consequences which its negligence

played any part, even the slightest, in producing [p]laintiff's injury and [p]laintiff is entitled to be compensated for all injury and damage suffered by him, even the improbable or unexpectedly severe consequences of [d]efendant's negligence or wrongful act.

If you find for [p]laintiff, you should compensate him for any aggravation of an existing disease or physical defect (or activation of any such latent condition), resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of [p]laintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. *However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.*

(Emphasis supplied.) Gustafson specifically complains regarding the refusal of the trial court to give the emphasized portion of the instruction. We have previously referred to similar language as the "apportionment" instruction.

We have held that the apportionment instruction is appropriate where there is evidence of a preexisting condition but the degree to which that condition may have been aggravated could not be determined. *Kirchner v. Wilson*, 251 Neb. 56, 554 N.W.2d 782 (1996). We have also held that in the absence of proof of aggravation, an instruction on apportionment of damages would be inappropriate. *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992).

In the present case, the evidence clearly demonstrates that Gustafson suffered three injuries, presented three separate causes of action, and was asymptomatic prior to the first accident. While the general verdict in this case does not provide information as to whether the jury found that the injuries arose as a result of one or more of the incidents, whether the jury awarded damages for the aggravation of a preexisting injury occurring in one of the first two incidents, or whether Burlington was not negligent and therefore not responsible for any preexisting condition, Gustafson suffered no prejudice by the court's refusal to give his requested instruction. Neb. Rev.

Stat. § 25-1122 (Reissue 1995) specifically states that a jury, by its general verdict, "pronounce[s] . . . upon all or any of the issues either in favor of the plaintiff or defendant." Because the jury through its general verdict presumptively held all causes of action in favor of the plaintiff, Gustafson, the apportionment language in this instance was irrelevant, and the court committed no reversible error in refusing to give the instruction.

Finding no reversible error, we affirm the judgment of the trial court upon the verdict of the jury.

AFFIRMED.

WHITE, C.J., concurring.

I respectfully concur. Although I agree with the majority that a general verdict pronounces all issues in favor of the prevailing party and so negates the necessity in this case of giving the apportionment instruction, I submit that the apportionment instruction should still be given in situations such as this.