SHAWN STUKENHOLTZ, APPELLANT, V.
EDWARD L. BROWN, APPELLEE.
679 N.W.2d 222

Filed May 14, 2004.   No. S-03-136.

Jeffrey J. Funke, of Hoch, Funke & Kelch, for appellant.

Michael G. Mullin, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Shawn Stukenholtz appeals the denial of her motion for a new trial after a jury awarded her $2,000 for damages she sustained in a motor vehicle collision. On appeal, she argues that the district court erred by refusing to allow a physician's assistant to testify about the cause of her injuries and the necessity of her medical bills. We affirm because Stukenholtz failed to provide foundation that the physician's assistant was familiar with the practice and treatments of medical doctors and a chiropractor so that he could reasonably rely on their reports to form an opinion.

## BACKGROUND

Stukenholtz brought this action against the appellee, Edward L. Brown, alleging damages incurred from a motor vehicle

collision. At trial, Stukenholtz testified about the June 22, 1996, collision and her activities after the collision. She did not receive medical treatment at the scene, but later went to the hospital after she had tingling in her eyebrow and pain in her arm. She was treated by a physician's assistant, Douglas J. Langemeier, and returned home, but felt "achy" and "stiff" the next day.

Stukenholtz visited her doctor on June 28, 1996. She had pain in her neck and shoulder blades, and her whole body was sore. She saw the doctor again on July 25 because the tightening in her neck and back was getting worse. On August 30, she was referred to an orthopedic specialist.

On September 14, 1996, while leaning over a bathtub, Stukenholtz experienced a muscle spasm in her middle back to the top of her shoulder. She could not stand up because of the pain and was treated at the hospital.

From October 29, 1996, through March 1997, Stukenholtz saw Dion Higgins, a chiropractor, and received treatment from him for a cervical-thoracic strain. However, she continued to have some pain and headaches.

At trial, all of Stukenholtz' medical bills, including her chiropractic bills, were introduced into evidence. Brown stipulated that the expenses were fair and reasonable for like charges in the area, but disagreed that bills incurred after June 22, 1996, were from the collision.

At trial, Langemeier testified about Stukenholtz' injury complaints on the day of the collision. He also reviewed Stukenholtz' medical records from other doctors and specialists, including an orthopedist and Higgins, who treated Stukenholtz after she was seen by Langemeier. When Langemeier was asked for a diagnosis of Stukenholtz' injuries to a reasonable degree of medical certainty, Brown objected on foundation. He argued that a physician's assistant was not competent to testify to a reasonable degree of medical certainty and asked that the testimony be limited to personal opinion based solely on Langemeier's examination of Stukenholtz. The objection was sustained. Without objection, Langemeier then testified, based on reasonable medical certainty, that when he examined Stukenholtz on the day of the collision, she had sustained a rhomboid strain.

After Langemeier gave his opinion, in an offer of proof, Stukenholtz stated that had Langemeier been allowed to further testify, he would have testified to a reasonable degree of medical certainty, based on other medical specialists' reports, that Stukenholtz had received a cervical-thoracic strain. In addition, he would have testified the medical bills incurred from June 22, 1996, through March 1997 were reasonable, fair, and necessary and caused by the collision. Brown objected to the offer of proof, arguing that Langemeier was not competent to give an opinion based on reports of medical specialists and a chiropractor and that there was a lack of foundation.

Higgins testified about Stukenholtz' complaints when he saw her and about muscle spasms she had in her back. He later diagnosed her as suffering from a cervical-thoracic strain and noted an abnormal spine position. He testified that there were different causes for an abnormal spine position, such as muscle tension, repetitive motion, a car accident, or a slip and fall. He also stated that the problem was not always caused by traumatic injury. Higgins, however, testified that based on his experience and training, it was his opinion to a reasonable degree of medical certainty that Stukenholtz had a cervical-thoracic strain because of the June 22, 1996, motor vehicle collision.

The jury awarded Stukenholtz $2,000, and she moved for a new trial, arguing that the court erred by not allowing Langemeier to testify about the cause of her injuries, the necessity of treatment for the injuries, and the reasonableness of the medical expenses. The motion was overruled, and Stukenholtz appeals.

## ASSIGNMENTS OF ERROR

Stukenholtz assigns that the court erred by not allowing Langemeier to testify about the cause of her injuries, the necessity of treatment for the injuries, and the reasonableness of the medical expenses.

## STANDARD OF REVIEW

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Carlson v. Okerstrom, ante* p. 397, 675 N.W.2d 89 (2004).

It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001).

## ANALYSIS

Stukenholtz contends that Langemeier should have been allowed to review the reports of physicians and a chiropractor and testify to a reasonable degree of medical certainty that Stukenholtz received a cervical-thoracic strain in her back from the collision. She also argues that Langemeier should have been allowed to testify that the medical bills incurred from June 22, 1996, through March 1997 were reasonable, fair, and necessary as a result of the collision. Brown argues there was insufficient foundation for Langemeier to give an opinion based on the records of medical doctors and a chiropractor who saw Stukenholtz after she was treated by Langemeier.

Neb. Rev. Stat. § 27-703 (Reissue 1995) provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We have emphasized however, that a testifying expert may not merely act as a conduit for hearsay, and if the trial court in its discretion determines that the introduction of the expert's testimony will merely act as a conduit for hearsay, the trial court has discretion to refuse to admit the evidence. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997). In addition, opinion evidence which is unsupported by appropriate foundation is not admissible. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999).

Here, Stukenholtz failed to provide sufficient foundation to show that Langemeier was competent to use the reports of medical doctors and a chiropractor to form an opinion about the cause of the cervical-thoracic strain and the necessity of treatment.

Langemeier failed to show that he was familiar with the types of treatment of specialists such as an orthopedist and chiropractor.

There was no evidence that Langemeier was familiar with orthopedic or chiropractic practice, treatment, or diagnosis. Instead, the record contains evidence of Langemeier's general education and emergency room practice and a general statement in the offer of proof that he would testify to a reasonable degree of medical certainty based on the reports from other medical professionals. However, without further information about Langemeier's knowledge of the practice and treatments of the specialists, the court could not determine whether Langemeier could reasonably rely on reports from the professionals to form an opinion. Also, in the absence of foundation, Stukenholtz failed to show that Langemeier was competent to give an expert opinion on the issue whether her medical bills after June 22, 1996, were necessary and caused by the accident. See *State v. Mack*, 134 Ariz. 89, 654 P.2d 23 (Ariz. App. 1982).

Stukenholtz relies on two cases to argue that the court abused its discretion by denying Langemeier's testimony: *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), and *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999). However, in those cases, the testifying experts were familiar with and could reasonably rely on the reports of other experts. For example, in *Pruett*, the expert based his opinion on data collected from his colleagues in the same medical field. In *Gittins*, a physician relied in part on reports from other medical doctors or less educated medical professionals and we stated that he was familiar with the treatment received from those providers. Here, however, Stukenholtz sought to offer opinion testimony based on reports from professionals outside of Langemeier's field without providing foundation that he was familiar with those specialties and the treatments provided.

Stukenholtz failed to provide foundation that Langemeier was competent to testify about what caused the cervical-thoracic strain and the necessity of the medical bills. She also failed to show that Langemeier would reasonably rely on the reports of medical professionals such as an orthopedist and chiropractor. Thus the court did not abuse its discretion when it excluded the testimony.

AFFIRMED.